TRI-STATE COACH LINES, INC., *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. METROPOLITAN PIER AND EXPOSITION AUTHORITY, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)   No. 1—98—3322

Opinion filed June 30, 2000.

James Geis Law Office (James Geis, of counsel), Santiago A. Durango, Law Offices of Allan C. Zuckerman (Allan C. Zuckerman, of counsel), and Law Offices of James McGurk (James A. McGurk, of counsel), all of Chicago, for appellants.

Renee Benjamin, and Mayer, Brown & Platt (Hugh R. McCombs, Phillip S. Reed, and Jeffrey W. Sarles, of counsel), both of Chicago, for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Tri-State Coach Lines, Inc., and certified members of Class B(1) and Class B(2) (Class B) appeal from an order of the circuit court granting summary judgment against them and in favor of defendant Metropolitan Pier and Exposition Authority (MPEA) in a class action lawsuit filed by plaintiffs, ultimately certified by the court as Class A and Class B members, who sought, *inter alia*, a declaration determining whether MPEA's imposition of an airport departure tax on plaintiffs' ground transportation services violated section 14505(2) of the Interstate Commerce Commission Termination Act of 1995 (49 U.S.C. § 14505(2) (Supp. 1997)), which forbids state and local taxation on certain interstate travel. MPEA cross-appeals from the same order granting summary judgment against it and in favor of Class A. For the reasons set forth below, we affirm in part and reverse in part.

In 1992, the Illinois General Assembly, in enacting Public Act 87—733 (Pub. Act 87—733, eff. July 1, 1992), amended the Metropolitan

Pier and Exposition Authority Act (the Act) (70 ILCS 210/1 *et seq.*) (West 1994)) to authorize a $1 billion expansion of Chicago's McCormick Place. To finance the expansion, the General Assembly directed MPEA, a political subdivision of local government, a body politic, and a municipal corporation responsible for, *inter alia,* the construction of facilities at McCormick Place, to issue bonds. See 70 ILCS 210/13.2 (West 1994). To repay the bonds, the General Assembly authorized MPEA to impose certain new local taxes, including "an occupation tax on all persons, other than a governmental agency, engaged in the business of providing ground transportation for hire to passengers in the metropolitan area." 70 ILCS 210/13(f) (West 1994). The General Assembly then directed MPEA to levy this occupation tax at a specified rate upon each "taxi or livery vehicle [or bus or van] departure with passengers for hire from [Chicago's] commercial service airports." 70 ILCS 210/13(f) (West 1994).

In accordance with the Act, MPEA enacted the MPEA Airport Departure Tax Ordinance (Ordinance), which became effective January 1, 1993. The Ordinance requires the levying of an airport departure tax, otherwise known as the MPEA Airport Departure Tax, upon the following specific categories of providers of ground transportation:

> "(i) Category 1. For each taxi or livery vehicle departure from a commercial service airport with passengers for hire: $2 per departure.
>
> (ii) Category 2. *** [F]or each departure from a commercial service airport with passengers for hire: $9 per bus or van with a capacity of 1-12 passengers; $18 per bus or van with a capacity of 13-24 passengers; and $27 per bus or van with a capacity of over 24 passengers.
>
> (iii) Category 3. For each departure from a commercial service airport with passengers for hire in a bus or van operated by a person regulated by the Interstate Commerce Commission or the Illinois Commerce Commission, and operating scheduled service from the airport, and charging fares on a per passenger basis: $1 per passenger." Ordinance § 1—3.

Shortly after its imposition, the airport departure tax became the subject of two separate constitutional challenges. In *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority,* 172 Ill. 2d 243, 665 N.E.2d 1246 (1996), a case filed by some of the same plaintiffs who have filed this action, our supreme court held that the airport departure tax, as applied to suburban and out-of-state ground transportation operators providing passenger service from Chicago's airports to destinations beyond the city limits, does not violate the

equal protection clause of the United States Constitution (U.S. Const., amend. XIV), the interstate commerce clause of the United States Constitution (U.S. Const., art. I, § 8), or the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2). *Allegro*, 172 Ill. 2d at 260, 269. In *Terry v. Metropolitan Pier & Exposition Authority*, 271 Ill. App. 3d 446, 648 N.E.2d 1047 (1995), this court rejected similar constitutional claims made by vehicle operators who were being taxed under the Ordinance pursuant to their ground transportation of passengers into Chicago's city limits. *Terry*, 271 Ill. App. 3d at 452-56.

On February 7, 1996, plaintiffs in the present case, all ground transportation operators engaged in the business of transporting passengers for-hire by bus, taxi, or livery from Chicago's O'Hare International Airport (O'Hare) and Midway Airport (Midway) to destinations in Illinois, northern Indiana, and southern Wisconsin, filed a class action lawsuit on behalf of themselves and others similarly situated, challenging the levying of the airport departure tax upon them, not on any constitutional basis, but on a new statutory provision contained in the Interstate Commerce Commission Termination Act of 1995 (ICCTA), Pub. L. No. 104—88, 109 Stat. 803 (codified at 49 U.S.C. § 13101 *et seq.* (Supp. 1997)), which became effective January 1, 1996. Section 14505(2) of the ICCTA, upon which plaintiffs rely, provides that "[a] State or political subdivision thereof may not collect or levy a tax, fee, head charge, or other charge on *** the transportation of a passenger traveling in interstate commerce by motor carrier." 49 U.S.C. § 14505(2) (Supp. 1997).

In their class action complaint, as amended, and numerous subsequent pleadings, plaintiffs alleged that the clear language of section 14505(2) protects from local taxation the commercial ground transportation activities of plaintiffs' proposed class members. Plaintiffs' proposed Class A consisted of commercial operators providing for-hire ground transportation to passengers departing from O'Hare and Midway and destined for locations beyond Illinois' border. Plaintiffs' proposed Class B consisted of those commercial operators providing for-hire ground transportation to passengers departing from O'Hare and Midway and destined for locations within Illinois' border who prearranged their ground transportation as one component of an interstate journey by air. Plaintiffs maintained that both proposed Class A and Class B are transporting passengers traveling in interstate commerce and, thus, the airport departure tax, as applied against each class, violates section 14505(2)'s prohibition against state and local taxation of "the transportation of a passenger traveling in interstate commerce by motor carrier." Stated another way, plaintiffs alleged that section 14505(2) of the ICCTA, as applied against them,

preempts and prohibits imposition of the airport departure tax. Accordingly, plaintiffs sought, *inter alia*, a court order declaring the airport departure tax, as applied against them, invalid and an injunction restraining MPEA from collecting the airport departure tax.

In its response to plaintiffs' class action complaint and request for injunctive relief, MPEA argued, *inter alia*, that the legislative history of section 14505 indicates that Congress had intended to preempt only state and local taxation of tickets purchased by passengers traveling interstate on buses. Therefore, MPEA argued, section 14505(2) applied, if at all, to only a small fraction of plaintiffs' ground transportation activities taxed under the Ordinance. MPEA, consequently, filed a motion for judgment on the pleadings with respect to the allegations brought on behalf of proposed Class B.

The trial court granted MPEA's motion, finding that plaintiffs had not stated a cause of action with respect to Class B but had with respect to Class A. The court determined that section 14505(2) prohibits levying the airport departure tax on departures from O'Hare and Midway to destinations located beyond Illinois' border but does not prohibit levying the airport departure tax on departures from O'Hare and Midway to destinations located within Illinois. Upon the parties' agreement, the court subsequently vacated its order awarding judgment on the pleadings in favor of MPEA as to Class B so that the issue could be resolved by summary judgment.

The trial court ordered the case to proceed as a class action, and it certified Class A and Class B, dividing Class B into Classes B(1) and B(2). Class A consists of those ground transportation operators who provide for-hire passenger transportation from O'Hare and Midway to destinations located in northern Indiana and southern Wisconsin. Class B consists of those operators who provide service to destinations located within Illinois "where the passengers have prearranged[1] their ground transportation as part of their interstate and/or foreign travel by air" (Class B(1)) or are "traveling on a through ticket pursuant to a motor carrier and airline master purchase of service agreement" (Class B(2)). Plaintiffs and MPEA then filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of plaintiffs and against MPEA as to Class A (those operators providing service to destinations outside Illinois) and against the plaintiffs and in favor of MPEA as to Class B (operators providing

---

[1]Plaintiffs define "prearrangement" as "the arrangement of the single-state ground segment of the trip by the passenger, the air carrier, or by a third party, such as the travel agency or charter service, prior to the commencement of the cross-border air segment of the passenger's journey."

prearranged service to destinations within Illinois). This appeal and cross-appeal followed.

▇▇▇ Given the procedural posture of this case, we initially address the question of whether the trial court should have dismissed plaintiffs' action for lack of jurisdiction based on plaintiffs' failure to exhaust their administrative remedies. According to our supreme court:

> "It is well established that, in cases which seek to avoid the statutory procedures relating to the assessment and collection of taxes, relief by way of declaratory judgment should not be afforded in a tax case that did not merit relief in chancery by way of injunction. [Citations.] Although the existence of another remedy does not ordinarily preclude bringing an action for declaratory judgment, in revenue cases it is the rule, applying general equitable principles, that relief by way of declaratory judgment is not available if the statute provides an adequate remedy at law." *People ex rel. Fahner v. American Telephone & Telegraph Co.*, 86 Ill. 2d 479, 484-85, 427 N.E.2d 1226 (1981).

Judicial scrutiny by way of equity is improper where administrative review is available under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)). See *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 353-57, 326 N.E.2d 737 (1975) (overturning *Owens-Illinois Glass Co. v. McKibbin*, 385 Ill. 245, 52 N.E.2d 177 (1943)); accord *County of Knox ex rel. Masterson v. Highlands L.L.C.*, 188 Ill. 2d 546, 551-52, 723 N.E.2d 256 (1999). As explained in *Allphin*, the rationale underlying the doctrine of exhaustion of administrative remedies (exhaustion doctrine), which includes administrative review in the circuit court, is that "(1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved party may succeed before the agency, rendering judicial review unnecessary." *Allphin*, 60 Ill. 2d at 358. The Administrative Review Law applies to and governs:

> "every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of *** this [law] or its predecessor, the Administrative Review Act. *** In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed." 735 ILCS 5/3—102 (West 1996).

See, *e.g., Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 317-19, 688 N.E.2d 82 (1996) (exhaustion doctrine applied because the agency had exclusive jurisdiction in the case and administrative review was the sole remedy for challenging the agency's orders).

■ Pursuant to our request during oral arguments, the parties briefed the applicability of the exhaustion doctrine in this appeal, and we are persuaded that the trial court had jurisdiction to reach the merits. First, as plaintiffs correctly argue, the Act (70 ILCS 210/13(f) (West 1996)), the legislation conferring power to MPEA to impose the airport departure tax, did not expressly adopt the Administrative Review Law provisions.[2] Rather, the Ordinance enacted by MPEA pursuant to MPEA's authority under the Act merely provides that plaintiffs await determinations by the MPEA collector in accordance with the procedures provided in the Ordinance (MPEA Airport Departure Ordinance, Article V, Procedures).

Secondly, we find that exceptions to the general requirement of strict compliance with the exhaustion doctrine exist in the instant case. See generally *Northwestern University v. City of Evanston*, 74 Ill. 2d 80, 86-88, 383 N.E.2d 964 (1978); *Allphin*, 60 Ill. 2d at 358. The one we find applicable here is that a party need not exhaust his administrative remedies before seeking judicial relief if his complaint attacks the constitutionality of a statute, ordinance, or administrative rule on its face. See *Northwestern University*, 74 Ill. 2d at 86; see, *e.g.*, *County of Kane v. Carlson*, 116 Ill. 2d 186, 198-99, 507 N.E.2d 482 (1987) (statute); *Phillips v. Graham*, 86 Ill. 2d 274, 289, 427 N.E.2d 550 (1981) (statute); *City of Chicago v. Illinois Commerce Comm'n*, 79 Ill. 2d 213, 217-18, 402 N.E.2d 595 (1980) (administrative rule); *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 977, 713 N.E.2d 754 (1999) (ordinance).

Plaintiffs in the present case allege in their complaint that MPEA's imposition of the airport departure tax upon them violates section 14505 of the ICCTA. MPEA, in its verified answer, admits that it imposed the airport departure tax upon plaintiffs and further states that plaintiffs' other allegations were conclusions of law requiring no response. In their supplemental briefs filed after oral arguments,

---

[2]We note that the other subsections of section 13 of the Act, *i.e.*, sections 13(b), (c), (d), and (e), relating to MPEA's taxing power, do expressly adopt the Administrative Review Law. Section 13(b) of the Act incorporates section 11 of the Retailers' Occupation Tax Act (35 ILCS 120/11a (West 1996)), which expressly adopts the Administrative Review Law. Section 13(c) of the Act incorporates the provisions contained in the Hotel Operators' Occupation Tax Act, which expressly adopts the Administrative Review Law. See 35 ILCS 145/10 (West 1996). Sections 13(d) and (e) of the Act incorporate sections 3 and 4, respectively, of the Automobile Renting Occupation and Use Tax Act (35 ILCS 155/3, 4 (West 1996)), which expressly adopt the Administrative Review Law by their incorporation of the provisions contained in the Retailers' Occupation Tax Act.

plaintiffs and defendant challenge the Ordinance as "fatally defective on its face because it conflicts with the federal statute [49 U.S.C. § 14505]," and they argue that plaintiffs' allegation that section 14505 preempts the airport departure tax under any set of facts makes it a facial challenge to the constitutionality of the departure tax under the supremacy clause (U.S. Const., art. VI).

We agree with plaintiffs and defendant. As our supreme court has stated, "[t]he preemption doctrine is rooted in the supremacy clause of the United States Constitution." *Orman v. Charles Schwab & Co.*, 179 Ill. 2d 282, 285, 688 N.E.2d 620 (1997). "Under the supremacy clause (U.S. Const., art. VI), Federal law preempts State law when the latter 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Ginn v. Consolidation Coal Co.*, 107 Ill. App. 3d 564, 565, 437 N.E.2d 793 (1982), quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581, 586-87, 61 S. Ct. 399, 404 (1941). Plaintiffs in the case at bar, unlike the plaintiffs in *Silver Fox Limousine v. City of Chicago*, 306 Ill. App. 3d 103, 713 N.E.2d 583 (1999), who challenged the application of the City of Chicago's ground transportation tax and, therefore, had to exhaust their administrative remedies before seeking judicial review, here raised a constitutional preemption claim and were, in essence, challenging the Ordinance as being facially invalid, rather than invalid as applied to them. Consequently, plaintiffs were not required to exhaust their administrative remedies. See generally *Phillips*, 86 Ill. 2d at 289 (noting that if a party's claim is that a statute on its face was applied in a discriminatory or arbitrary manner rather than being unconstitutional, the party filing the complaint must first seek relief through the applicable administrative remedies); compare *Sanders v. City of Springfield*, 130 Ill. App. 3d 490, 493, 474 N.E.2d 438 (1985) (reaching the merits of the plaintiff's preemption claim), and *Ginn*, 107 Ill. App. 3d at 567-68 (same), with *Midland Hotel*, 282 Ill. App. 3d at 319-21 (affirming dismissal of a complaint because the complaint did not challenge the facial validity of the statute but, rather, challenged the agency's interpretation and application of the statute's provisions), and *Head-On Collision Line, Inc. v. Kirk*, 36 Ill. App. 3d 263, 267-69, 343 N.E.2d 534 (1976) (same).

Another exception to the exhaustion doctrine that we find applicable to the present case is " 'where no issues of fact are presented or agency expertise is not involved.' " *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296, 306-07, 652 N.E.2d 301 (1995), quoting *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308-09 (1989) (stating that where an issue can be resolved by statutory and case law interpretation, it falls within

a court's expertise and not an administrative agency's); see, *e.g.,* *County of Knox,* 188 Ill. 2d at 552 (agency's particular expertise was not implicated in the necessary statutory interpretation); *Soo Line R.R. Co. v. Hynes,* 269 Ill. App. 3d 81, 93, 646 N.E.2d 1218 (1994) (same). We believe that plaintiffs' complaint presents a pure issue of law which necessitates our statutory interpretation and does not require fact finding by the administrative agency or an application of its particular expertise. Accordingly, because plaintiffs' claim falls within established exceptions to the exhaustion doctrine, we find that the plaintiffs were not required to exhaust their administrative remedies prior to proceeding in our state courts. We therefore address the merits of the arguments made on appeal.

Plaintiffs contend that the trial court erred in granting summary judgment in favor of MPEA and against Class B, the class of operators who transport airline passengers from O'Hare and Midway to destinations within Illinois, in light of the express preemption stated in section 14505(2) of the ICCTA, which prohibits state or local taxation of "the transportation of a passenger traveling in interstate commerce by motor carrier." 49 U.S.C. § 14505(2) (Supp. 1997). Plaintiffs argue that each time an airline passenger takes a taxi, livery, or bus ride from O'Hare or Midway that was "prearranged" in connection with an immediately preceding interstate flight, that passenger is "traveling in interstate commerce," even if the taxi, bus or livery ride is headed for a destination within the State of Illinois. Therefore, according to plaintiffs, section 14505(2) proscribes the levying of the airport departure tax upon Class B because the constituent prearranged ground segment of the passengers' journeys remains interstate in character even though it occurs solely within the boundaries of Illinois.

In response, MPEA argues that the trial court properly upheld the airport departure tax with respect to Class B because any interstate travel undertaken by the passengers whom Class B transports is not by "motor carrier" designated in section 14505(2) of the ICCTA, but by airplane. Class B's motor carrier ground transportation trips of passengers from O'Hare and Midway to destinations within Illinois, MPEA asserts, are exclusively intrastate. Therefore, section 14505(2), which applies only to taxation of "motor carrier" transportation between two states, is inapplicable to the intrastate ground transportation services provided by Class B. MPEA further argues that there is no language in the ICCTA or any legislative history to support plaintiffs' contention that prearranged rides constitute an exception to the statute's plain limitation of state taxes on transportation that crosses a state line.

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996); *Allegro*, 172 Ill. 2d at 256. Where the parties have filed cross-motions for summary judgment, they agree that no genuine issue as to any material fact exists and that only a question of law is involved, and they invite the reviewing court to decide the issues based on the record. See *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133 (1993). The standard of appellate review in such a case, as here, is *de novo*. See *Andrews*, 256 Ill. App. 3d at 769.

A brief explanation regarding the history of the ICCTA is warranted here. Congress passed the ICCTA to "abolish the Interstate Commerce Commission, to amend subtitle IV of title 49, United States Code, to reform economic regulation of transportation, and for other purposes." Pub. L. No. 104—88, Preamble, 109 Stat. 803 (codified at 49 U.S.C. § 13101 *et seq*. (Supp. 1997)). Consistent with its goal of simplifying federal regulation over interstate transportation, Congress delegated many of its regulatory responsibilities to other agencies. Within Part B of the ICCTA, Congress delegated to the Department of Transportation (DOT) regulatory authority over interstate motor carrier transportation. 49 U.S.C. §§ 13301, 13501 (Supp. 1997). In chapter 135, Congress prescribed the limits of federal authority to regulate motor carrier transportation over, *inter alia*, motor carrier transportation that does not cross a state line (section 13501), taxicab service (section 13506(a)(2)), and the transportation of passengers that is "incidental to transportation by aircraft" (section 13506(a)(8)(A)). Chapter 145 contains provisions delineating between those transportation activities over which the federal government has chosen to assert its authority and those that remain subject to the states' sovereign regulatory powers. Section 14505, upon which plaintiffs rely, states in its entirety:

"A State or political subdivision thereof may not collect or levy a tax, fee, head charge, or other charge on—

(1) a passenger traveling in interstate commerce by motor carrier;

(2) the transportation of a passenger traveling in interstate commerce by motor carrier;

(3) the sale of passenger transportation in interstate commerce by motor carrier; or

(4) the gross receipts derived from such transportation." 49 U.S.C. § 14505 (Supp. 1997).

■ The issue confronting this court is the proper construction of

section 14505(2) in the context of the ICCTA. The framework for construing a legislative provision, such as section 14505, is well established. The primary rule of statutory construction is to ascertain and give effect to the legislature's intent, and that inquiry must begin with the statute's language. See *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202, 545 N.E.2d 695 (1989). Where statutory language is ambiguous, a court may consider other extrinsic aids for construction, including the legislative history and statute's background, *e.g.*, the legislative committee reports. See *Kunkel v. Walton*, 179 Ill. 2d 519, 534, 689 N.E.2d 1047 (1997); *Van's Material*, 131 Ill. 2d at 202. A final cardinal rule of construction, of particular significance in the present case, is that each section of an act subject to two conflicting interpretations should be accorded the interpretation more harmonious with the act's general purpose. In this regard, our supreme court has stated:

> "The policies underlying a statute are often regarded as a valuable source of legislative intent. [Citations.] Examination of the reason and necessity for the law, the evils which the legislature sought to remedy and the purposes intended to be accomplished is particularly important in cases such as this, where the statutory language is not clear. [Citations.] This court will presume that the legislature had a definite purpose in enacting the statute and drafted the statute so that each part would be in harmony with that purpose. [Citations.] From this presumption proceeds the rule that the general purpose of the whole act shall control and that all the parts shall be interpreted consistently with this purpose. If the language of a statute is susceptible to two constructions, one of which will carry out its purpose and another which will defeat it, the statute will receive the former construction." *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 283-84, 586 N.E.2d 1217 (1992).

When resolving an issue of statutory construction, a reviewing court conducts a *de novo* review. See *Paris v. Feder*, 179 Ill. 2d 173, 177-78, 688 N.E.2d 137 (1997).

Applying these principles, we find that section 14505(2) is ambiguous because it is susceptible to two equally reasonable and conflicting interpretations. Plaintiffs reasonably interpret the phrase "interstate commerce" embodied in section 14505(2) to mean "continuity of transit," and they argue, therefore, that traveling interstate by airplane makes subsequent intrastate travel by motor carrier, when prearranged, "interstate" travel. Moreover, according to plaintiffs, when passengers travel in interstate commerce, as those whom the Class B plaintiffs service, and have prearranged their ground transportation segment of the trips through ticketing, contract, or reservation, section 14505(2) preempts from local taxation the ground segment of the

passengers' journeys, whether in-state or subsequently beyond a state's border. MPEA, on the other hand, reasonably interprets the language embodied in section 14505(2) to mean the prohibition of state and local taxation on the transportation of passengers traveling in interstate commerce, or from one state to another, only by way of "motor carrier." MPEA argues that, "before the prohibition under section 14505(2) can conceivably apply, there must at the very least be trips across a state line by motor carrier, something that clearly is not present where passengers are transported from Chicago's O'Hare or Midway Airport[ ] to destinations within Illinois." Both interpretations are reasonable. Thus, the statutory language is ambiguous and we next consider the legislative history and background of the statute for clarification of the legislature's intent in enacting section 14505(2).

According to the House and conference reports, the purpose underlying the enactment of section 14505 was to prohibit "a State or political subdivision of a State from levying a tax on bus tickets for interstate travel." H.R. Rep. No. 104—311, at 120 (1995); H.R. Conf. Rep. No. 104—422, at 220 (1995). An accompanying Senate report explicitly declares the reason underlying section 14505's enactment and states: "This provision is intended to override a recent court decision [(*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 131 L. Ed. 2d 261, 115 S. Ct. 1331 (1995))] permitting such a tax." S. Rep. No. 104—176, at 48 (1995); see also H.R. Conf. Rep. No. 104—422, at 220 ("This reverses a recent Supreme Court decision [(*Jefferson Lines*)] permitting states [to levy a tax on bus tickets for interstate travel] and conforms taxation of bus tickets to that of airline tickets").

The Supreme Court in *Jefferson Lines* departed from established precedent in ruling that Oklahoma could, without violating the commerce clause, levy a sales tax on the full price of a ticket for bus travel from Oklahoma to another state. *Jefferson Lines*, 514 U.S. at 200, 131 L. Ed. 2d at 281, 115 S. Ct. at 1347. The precedent from which the *Jefferson Lines* court departed was the Supreme Court's 1948 decision in *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 92 L. Ed. 1633, 68 S. Ct. 1260 (1948), in which the court struck down as unconstitutional an unapportioned state tax imposed by New York on the gross receipts of a company that had sold tickets in New York for interstate bus travel. The *Mealey* court found the state statute fatally flawed because it failed to apportion taxable receipts in the same proportions that miles traveled through the various states bore to the total, thus causing "interstate transportation [to] bear more than 'a fair share of the cost of the local government whose protection it enjoys.' " *Mealey*, 334 U.S. at 663, 92 L. Ed. at 1641, 68 S. Ct. at 1266,

quoting *Freeman v. Hewit*, 329 U.S. 249, 253, 91 L. Ed. 265, 272, 67 S. Ct. 274, 288 (1946).

The state tax held unconstitutional in *Mealey* was, for all relevant purposes, identical to that at issue in *Jefferson Lines*. Both cases involved taxes imposed upon interstate bus transportation. Oklahoma imposed its tax on the total value of trips of which a large portion may have taken place in other states, and New York, likewise, imposed its tax on the total value of trips of which a large portion took place in other states. Neither state made any effort to apportion the tax to reflect the comparative cost or value of the in-state and out-of-state portions of the trips to avoid taxing that portion of the interstate activity performed in other states. Nevertheless, the court in *Jefferson Lines* refused to follow *Mealey*, and it upheld the Oklahoma state tax, finding that it neither imposed an undue burden on interstate commerce nor presented a danger of multiple taxation. *Jefferson Lines*, 514 U.S. at 191, 131 L. Ed. 2d at 275-76, 115 S. Ct. at 1341. Consequently, by departing from the reasoning stated in *Mealey*, the *Jefferson Lines* court paved the way for states to impose sales taxes not only on the full price of interstate travel tickets but on other transportation services. See T. Kaye, *Show Me the Money: Congressional Limitations on State Tax Sovereignty*, 35 Harv. J. on Legis. 149, 166 (1998); T. McConnell, *Congress Gives Intercity Busing a Free Pass: A Comment on Jefferson Lines v. Oklahoma Tax Comm'n*, 23 Transp. L.J. 503, 518 (1996).

■ It was within this jurisprudential background and climate that Congress enacted section 14505 of the ICCTA. This background, coupled with the clear legislative declaration disclosed within the committee and conference reports, reveals a congressional purpose designed to prevent states and their political subdivisions from collecting or levying taxes on bus fares for interstate travel. Accordingly, we find that Congress' exclusive focus in enacting section 14505 was to ensure that the tickets for interstate city-to-city bus trips, trips often passing through multiple states and having minimal contact with the state of their origin, were not taxed by the originating state in a manner disproportionate to the benefits received in that state. Stated another way, the "particular evil" that section 14505 was intended to remedy was a state's imposition of a sales tax upon the whole price of an interstate bus ticket where the contact of the interstate bus trip with the taxing state was minor.

It follows then that section 14505 does not apply either to intrastate travel or to the type of travel represented by Class B in the present case, a class represented by ground transportation operators who transport passengers, subsequent to those passengers' interstate air

travels, from either O'Hare or Midway to destinations within Illinois on a prearranged basis. Accordingly, we hold that the trial court did not err in granting summary judgment against Class B and in favor of MPEA.

We next address the contention raised in MPEA's cross-appeal, which is that the trial court erred in granting summary judgment in favor of Class A based on its determination that section 14505(2) preempted the airport departure tax imposed upon ground transportation operators who transport passengers leaving O'Hare and Midway to surrounding localities in Indiana and Wisconsin. MPEA argues that the language and structure of section 14505, as well as related portions of the ICCTA, demonstrate no congressional intent to preclude states and localities from taxing commercial motor carrier departures from airports to homes, hotels, and businesses in communities served by those airports, even if those communities are located in another state. Rather, according to MPEA, legislative history confirms that Congress intended only to preclude disproportionate state taxes on the sale of interstate bus tickets.

Plaintiffs argue that section 14505(2) prohibits MPEA from imposing the airport departure tax on those ground transportation operators, as represented by Class A, who depart O'Hare and Midway with passengers traveling on ground transportation trips headed for destinations outside Illinois. Plaintiffs maintain that the trial court properly granted summary judgment in favor of Class A because section 14505(2) precludes local taxation of the transportation of passengers who cross state lines by motor carrier.

As discussed above, the legislative history of section 14505 of the ICCTA is clear that Congress intended merely to preclude states from disproportionately taxing *multistate* bus trips, a specific and limited danger not presented by the airport departure tax here when imposed upon those operators represented by Class B, who provide *intrastate* ground transportation travel. However, the issue presented by MPEA is whether Congress intended section 14505 to preempt state and local taxes upon the type of travel provided by the Class A members, who transport passengers from O'Hare or Midway in buses, taxis, and liveries to destinations outside Illinois.[3]

■ The preemption doctrine arises from the supremacy clause of the United States Constitution, and it allows federal law to preempt state law. U.S. Const., art. VI. A court's ultimate task, should a preemption issue arise, "is to determine whether State regulation is

---

[3]MPEA does not argue that the inclusion of taxis and liveries with buses in Class A was improper.

consistent with the structure and the purpose of the statute taken as a whole." *Davis v. States Drywall & Painting*, 268 Ill. App. 3d 704, 709, 645 N.E.2d 304 (1994). In making this determination, the court must examine the purposes of both the state and federal acts. See *Davis*, 268 Ill. App. 3d at 709-10. No preemption exists if the goals of the federal and state or local governments are different. See *Western Air Lines, Inc. v. Board of Equalization*, 480 U.S. 123, 130, 94 L. Ed. 2d 112, 119-20, 107 S. Ct. 1038, 1042 (1987) (no preemption existed where the "purpose and effect" of a state's airline property tax did not conflict with the policy embodied in the Federal Aviation Act); see also *La Salle National Bank v. County of Cook*, 34 Ill. App. 3d 264, 275, 340 N.E.2d 79 (1975) (finding that the goals of the federal and local governments were different).

■ A presumption exists in every preemption case that Congress did not intend to supplant state law. *Scholtens v. Schneider*, 173 Ill. 2d 375, 379, 671 N.E.2d 657 (1996); *Davis*, 268 Ill. App. 3d at 712. This "presumption against federal preemption" applies with special force where "a matter of primary state responsibility," like local taxation, is at stake. *Air Line Pilots Ass'n, International v. UAL Corp.*, 874 F.2d 439, 447 (7th Cir. 1989). Thus, no federal preemption exists concerning a state or local tax unless Congress made its intent to preempt "unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61, 115 L. Ed. 2d 410, 424, 111 S. Ct. 2395, 2401 (1991); accord *Department of Revenue v. ACF Industries, Inc.*, 510 U.S. 332, 345, 127 L. Ed. 2d 165, 176, 114 S. Ct. 843, 850-51 (1994); *Michigan v. United States*, 40 F.3d 817, 824 (6th Cir. 1994). This " 'requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision' " and is "an acknowledgement that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory*, 501 U.S. at 461, 115 L. Ed. 2d at 424, 111 S. Ct. at 2401, quoting *Will v. Michigan Department of State Police*, 491 U.S. 58, 65, 105 L. Ed. 2d 45, 54, 109 S. Ct. 2304, 2309 (1989).

■ Applying these principles, and placing section 14505(2) in both its statutory and textual context and comparing it against related provisions contained in the ICCTA, we find that Congress, in enacting section 14505, did not intend to preempt the levying of the airport departure tax here even upon the transportation services provided by Class A. First, the policy underlying section 14505 does not conflict with the purpose and effect of the airport departure tax. As discussed above, Congress enacted section 14505 to ensure that one state might not disproportionately tax the purchase of bus tickets for travel

through multiple states. In contrast, the Illinois General Assembly authorized the collection of the airport departure tax to help finance a recent expansion of McCormick Place. The effect created by the Ordinance imposing the airport departure tax is the collecting of a fee upon the departure of motor carrier trips by bus, taxi, or livery from O'Hare or Midway to homes or businesses in Illinois, southern Wisconsin, or northern Indiana. As MPEA points out, these trips are not analogous or comparable to the type of city-to-city interstate bus trips of the type considered by the Supreme Court in *Mealey* and *Jefferson Lines* and focused upon by Congress when enacting section 14505—trips where buses rather than aircraft were the means by which passengers engaged in long-distance, state-to-state travel.

Moreover, in enacting section 14505 to countermand the Supreme Court's decision in *Jefferson Lines*, Congress removed the danger that the state in which a cross-country bus trip originated and where the tickets were purchased could disproportionately burden interstate commerce by imposing a sales tax on the entire ticket price, despite the fact that the interstate bus trip had only relatively minor or brief contact with the taxing state. No danger of disproportionate taxation exists in the collection of the airport departure tax in the present case because the taxed commercial motor carriers, as represented by Class B, have their primary contact with and derive the bulk of their benefits from Illinois. See *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 266-67 (1996) (stating that if "every state imposed a tax triggered by departures from airports located within the state, each departure would only result in tax liability to a single state"); *Goldberg v. Johnson*, 117 Ill. 2d 493, 502, 512 N.E.2d 1262 (1987) (stating that where "no other taxing body can levy the tax being challenged, it is clear that there is no risk of multiple taxation").

Construction of the language of both the federal and state acts involved in the present case leads to a similar conclusion. The language of section 14505(2), prohibiting state taxation of "the *transportation* of passengers traveling in interstate commerce by motor carrier" is inapplicable to the airport departure tax, which is imposed not on the *transportation* of passengers in interstate commerce but upon the *departures* of commercial vehicles from O'Hare and Midway. (Emphasis added.) 49 U.S.C. § 14505(2) (Supp. 1997). In other words, the "taxable" event to which the airport departure tax attaches is not the interstate transportation of passengers but, rather, the ground transportation departures from the airports.

This construction is compelled when one considers the absence of any "unmistakably clear" expression of congressional intent to

preempt the imposition of a state or local tax on commercial motor carrier departures from an airport. And that telling omission is highlighted by the fact that Congress did employ such "unmistakably clear" preemptive language in other sections of the ICCTA. See, *e.g.,* 49 U.S.C. § 14501(a) (Supp. 1997) (clearly and unmistakably forbidding any state or local regulation relating to the scheduling of interstate or intrastate transportation and the rates incurred thereunder); 49 U.S.C. § 14502(b)(3) (Supp. 1997) (clearly and unmistakably forbidding any state or local *ad valorem* property tax on motor carrier transportation property at a rate higher than on other commercial and industrial property in the same jurisdictional area). Moreover, this construction is further compelled when one considers that in related provisions contained in the ICCTA, Congress expressly exempted from federal regulation "taxicab service" (49 U.S.C. § 13506(a)(2) (Supp. 1997)) and motor carrier transportation "incidental to transportation by aircraft" (49 U.S.C. § 13506(a)(8)(A) (Supp. 1997)).

Furthermore, we note that section 13506(a)(2) of the ICCTA exempts from federal regulation "a motor vehicle providing taxicab service and having a capacity of not more than 6 passengers and not operated on a regular route or between specified places." 49 U.S.C. § 13506(a)(2) (Supp. 1997). This exemption is a carryover from the former Interstate Commerce Commission Act (49 U.S.C. § 10102 (1994)), which included an identical provision. See 49 U.S.C. § 10526(a)(8)(A) (1994). Construing that provision, the Supreme Court concluded that Congress had "left the field" of taxicab regulation "largely to the states" because of the recognition that "[t]he operation of taxicabs is a local business." *Buck v. People,* 343 U.S. 99, 102, 96 L. Ed. 775, 781, 72 S. Ct. 502, 504 (1952). Accordingly, the *Buck* court upheld a California ordinance requiring taxi drivers to pay an annual $1 for a driver's permit, even though those taxi drivers were transporting passengers across the international border into Mexico because the "[o]peration of taxicabs across state lines or international boundaries is so closely related to the local situation." *Buck,* 343 U.S. at 102, 96 L. Ed. at 781, 72 S. Ct. at 504. Congress provided no indication that it intended passage of section 14505 to overturn *Buck.* Accordingly, based on the reasoning in *Buck,* we hold that the "taxicab service" exemption contained in section 13506(a)(2) of the ICCTA similarly leaves the field open for the levying of the airport departure tax on taxicab and livery departures conducted by the Class A members from O'Hare and Midway to destinations in northern Indiana and southern Wisconsin.

We additionally note that section 13506(a)(8)(A) of the ICCTA exempts from federal regulation the "transportation of passengers by

motor vehicle incidental to transportation by aircraft." 49 U.S.C. § 13506(a)(8)(A) (Supp. 1997). In construing the identical exemption in the predecessor statute (see 49 U.S.C. § 10526(a)(8)(A) (1994)), the federal court in *National Bus Traffic Ass'n v. United States*, 249 F. Supp. 869 (N.D. Ill. 1965), held that motor carrier trips from airports located in Washington, D.C., and Baltimore, Maryland, to cities in surrounding states were "incidental to transportation by aircraft" and thus outside the scope of federal regulatory authority under the predecessor statute. *National Bus*, 249 F. Supp. at 873. The *National Bus* court viewed the word "incidental" to mean "a minor adjunct to the prime matter, of lesser significance, but related and necessary to the complete effectuation of the matter in chief." *National Bus*, 249 F. Supp. at 873. In upholding application of the exemption to trips from the airports to destinations across the state lines, the *National Bus* court reasoned: "Surely the final phase of the journey on land from the airport where the plane descends to the city where the air trip ends is incidental to the transportation by air." *National Bus*, 249 F. Supp. at 873. The same reasoning applies in the present case. By their very nature, trips provided by Class A from O'Hare and Midway to destinations specified by the passengers beyond the Illinois border are "a minor adjunct," "of lesser significance," and "the final phase of the passengers' air trips." Thus, such ground transportation trips are "incidental to transportation by aircraft" and are, therefore, beyond the scope of section 14505.

Moreover, as MPEA notes in its appellate brief, Chicago is a major commercial center located in the far northeast corner of Illinois. Its metropolitan area extends into neighboring Wisconsin and Indiana, and O'Hare and Midway serve as the major airports for residents in those areas. The motor carrier trips in question from these airports, whether to Chicago in Illinois, Kenosha in Wisconsin, or Hammond in Indiana, simply enable those residents to reach their final destinations. Congress, by reenacting the "incidental to transportation by aircraft" exemption, plainly intended to remove all such trips from the reach of the ICCTA. This reasoning is buttressed by, with substantial deference given to, regulations issued by the Department of Transportation that expressly exempt all motor carrier departures from O'Hare to northwest Indiana from federal regulatory jurisdiction. See 49 C.F.R. § 1047.45(d)(3) (1995).[4]

In summary, section 14505(2) does not preempt the Ordinance requiring the levying of the airport departure tax upon either Class A

---

[4]49 C.F.R. § 1047.45 states that the statutory incidental to air exemption applies to

or Class B because the text, structure, and history of section 14505, as well as related provisions in the ICCTA, indicate no congressional intent to preempt taxes on motor carrier departures from airports to homes, hotels, and businesses in communities served by those airports, even if those communities are located in another state. We therefore hold that the trial court erred in finding that the levying of the airport departure tax against Class A violates section 14505(2).

For the reasons stated, we affirm the circuit court's order granting summary judgment in favor of MPEA with respect to Class B and we reverse the circuit court's order granting summary judgment in favor of plaintiffs with respect to Class A.

Affirmed in part; reversed in part.

CAHILL, P.J., and WOLFSON, J., concur.

---

"the transportation of passengers who have had or will have an immediately prior or immediately subsequent movement by air." 49 C.F.R. § 1047.45(a) (1995).

The scope of this exemption extends to trips within an

"area encompassed by a 25-mile radius of the boundary of the airport at which the passengers arrive or depart and by the boundaries of the commercial zones *** of any municipalities any part of whose commercial zones falls within the 25-mile radius of the pertinent airport." 49 C.F.R. § 1047.45(a) (1995).

Further, for O'Hare, this area extends to an area reaching to

"points in Indiana on and north of U.S. Highway 30 and on and west of Indiana Highway 49." 49 C.F.R. § 1047.45(d)(3) (1995).