# Illinois Official Reports

## Appellate Court

---

***Kishwaukee Auto Corral, Inc. v. Department of Revenue,***
**2021 IL App (1st) 200236**

---

| | |
|---|---|
| Appellate Court Caption | KISHWAUKEE AUTO CORRAL, INC., Petitioner, v. THE DEPARTMENT OF REVENUE and THE ILLINOIS INDEPENDENT TAX TRIBUNAL, Respondents. |
| District & No. | First District, First Division<br>No. 1-20-0236 |
| Filed | November 8, 2021 |
| Decision Under Review | Petition for review of order of Illinois Independent Tax Tribunal, No. 15-TT-234. |
| Judgment | Reversed. |
| Counsel on Appeal | Lane M. Gensburg and Anne J. Kim, of Gensburg Calandriello & Kanter, P.C., of Chicago, for petitioner.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and David E. Neumeister, Assistant Attorney General, of counsel), for respondent Illinois Department of Revenue.<br><br>No brief filed for other respondent. |

Panel                JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Kishwaukee Auto Corral, Inc. (Kishwaukee), filed claims with the Illinois Department of Revenue (Department) for refunds of sales tax that it paid under the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 2018)) on vehicles sold through installment contracts that ended in the buyers' default. The Department denied the claims, and Kishwaukee sought administrative review in the Illinois Independent Tax Tribunal (Tribunal). The Tribunal granted the Department's motion for summary judgment, and Kishwaukee now appeals. As a matter of first impression, we find that Kishwaukee is entitled to the requested sales tax refunds under ROTA and reverse.

¶ 2                              I. BACKGROUND
¶ 3                             A. Stipulated Facts
¶ 4    The following facts are stipulated to by the parties. Kishwaukee is a used car dealership that sells cars via installment loan contracts. Thus, Kishwaukee is both a retailer and a lender. Since many of the buyers have poor credit, the loans have a high default rate, and Kishwaukee repossesses many of the cars before they are fully paid off.

¶ 5    As a seller of motor vehicles, Kishwaukee is required to pay Retailers' Occupation Tax (ROT) on a transaction-by-transaction basis, meaning that when it enters into a contract with a buyer, it must pay the full amount of the owed tax up front. Kishwaukee then recovers from the buyer a portion of the ROT in each installment payment until the car is fully paid off. Conversely, in cases where the buyer defaults and Kishwaukee repossesses the car, Kishwaukee never recovers the full ROT from the buyer.

¶ 6    Prior to July 31, 2015, when a buyer defaulted on an installment sale, Kishwaukee would claim, and the Department would grant, a refund or credit of the ROT that Kishwaukee did not receive from the buyer. In its regulations, the Department characterized such refund claims as "bad debt credit" or, alternatively, "repossession credit." See 86 Ill. Adm. Code 130.1960(d)(1), amended at 24 Ill. Reg. 18376 (eff. Dec. 1, 2000).

¶ 7    Effective July 31, 2015, the legislature amended ROTA to add section 6d, which provides, in relevant part:

> "(a) A retailer is relieved from liability for any tax that becomes due and payable if the tax is represented by amounts that are found to be worthless or uncollectible, *have been charged off as bad debt on the retailer's books and records in accordance with generally accepted accounting principles, and have been claimed as a deduction pursuant to Section 166 of the Internal Revenue Code* on the income tax return filed by the retailer. A retailer that has previously paid such a tax may, under rules and regulations adopted by the Department, take as a deduction the amount charged off by the retailer." (Emphasis added.) 35 ILCS 120/6d(a) (West 2018).

See Pub. Act 99-217 (eff. July 31, 2015).

¶ 8 Following the enactment of section 6d, the Department amended its regulation to require that for claims after July 31, 2015, a retailer must *both* (1) charge off the bad debt on its books and (2) claim a deduction pursuant to section 166 of the Internal Revenue Code (26 U.S.C. § 166 (2018)) on its federal income tax return to qualify for a refund of ROT paid on a defaulted installment contract. As amended, the regulation states that "[r]etailers or lenders that file federal returns on a cash basis and cannot claim a deduction pursuant to section 166 of the Internal Revenue Code are not eligible for the bad debt deduction." 86 Ill. Adm. Code 130.1960(d)(5)(B) (2018).

¶ 9 Kishwaukee is a cash basis taxpayer. Although retailers maintaining an inventory of personal property are typically required to file their federal income tax returns on an accrual basis, smaller taxpayers with annual gross receipts of less than $25 million per year, such as Kishwaukee, are allowed to file on a cash basis. For federal income tax purposes, cash basis taxpayers like Kishwaukee are not permitted to claim bad debt deductions on their federal income tax returns because they do not report receivables as income until actually received.

¶ 10 Because Kishwaukee files its federal income tax returns on a cash basis, the Department denied Kishwaukee's refund claims made after July 31, 2015, for ROT paid on repossessed cars, even though Kishwaukee charged off the defaulted loans in its internal books and records for financial accounting purposes.

¶ 11 B. Procedural History

¶ 12 On October 26, 2015, the Department issued a tentative claim denial to Kishwaukee for $61,312.89 in ROT prepaid on repossessed cars. On November 16, 2015, Kishwaukee timely filed a petition for review in the Tribunal. The parties filed cross-motions for summary judgment. As shall be discussed below, Kishwaukee challenged the Department's interpretation of section 6d and also argued that if section 6d precluded it from obtaining refunds for prepaid ROT, its application in this case violates the uniformity clause of the Illinois Constitution by creating an arbitrary distinction between cash and accrual basis taxpayers.

¶ 13 On January 7, 2020, the Tribunal issued a final order granting the Department's motion and denied Kishwaukee's motion. Kishwaukee timely filed the instant appeal.

¶ 14 II. ANALYSIS

¶ 15 Kishwaukee argues that it is entitled to claim a refund for ROT paid on defaulted installment contracts under section 6d of ROTA. Alternatively, Kishwaukee argues that if ROTA does not permit Kishwaukee to claim such a refund, the statute's application in this case violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) because it creates an arbitrary distinction between accrual basis taxpayers (who can claim such refunds) and cash basis taxpayers (who cannot).

¶ 16 We review an administrative agency's grant of summary judgment *de novo* (*Prairie Rivers Network v. Illinois Pollution Control Board*, 2016 IL App (1st) 150971, ¶ 23), meaning that we "review[ ] the matter anew—the same as if the case had not been heard before and as if no

decision had been rendered previously." *Ryan v. Yarbrough*, 355 Ill. App. 3d 342, 346 (2005).[1] The fundamental rule of statutory construction is to give effect to the legislators' intent, which is best indicated by the plain language of the statute. *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997). Where the language is clear, we must give it effect without adding limitations or conditions. *Id.* Where the language is ambiguous, we may consider extrinsic aids for construction, such as legislative history and the statute's background. *Tri-State Coach Lines, Inc. v. Metropolitan Pier & Exposition Authority*, 315 Ill. App. 3d 179, 190 (2000). If a statute is "reasonably susceptible" to a constitutional construction, we must give it such a construction to affirm its constitutionality and validity. *Morales*, 177 Ill. 2d at 448.

¶ 17    Initially, with respect to Kishwaukee's constitutional claim, we note that the Department failed to meet its burden of proof in the Tribunal. The uniformity clause provides: "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2. To survive scrutiny under this clause, "a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy." *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 153 (2003). The taxing body bears the initial burden of producing a justification for the classification, whereupon the burden shifts to the challenging party to show that the taxing body's justification is either legally insufficient or unsupported by facts. *Id.*

¶ 18    Before the Tribunal, the Department stated, without elaboration, that "there are clearly 'real and substantial differences['] between cash basis and accrual basis taxpayers." The Department did not articulate those differences, nor did it assert, much less argue, that such differences bore a reasonable relationship to the object of the legislation or to public policy. Since the Department failed to meet its burden of proof, Kishwaukee convincingly argues that the Tribunal erred as a matter of law in granting summary judgment to the Department. Kishwaukee further asserts that the Department should be precluded from offering a justification for the classification for the first time on appeal, since Kishwaukee cannot now offer evidence in rebuttal.

¶ 19    However, it is a longstanding rule that courts avoid deciding cases on constitutional grounds except as a last resort. See *People v. Bass*, 2021 IL 125434, ¶¶ 30-31 (vacating portions of appellate court decision that unnecessarily dealt with constitutional issues). Therefore, we begin by considering the proper interpretation of section 6d(a), which provides, in relevant part:

> "A retailer is relieved from liability for any tax that becomes due and payable if the tax is represented by amounts that are found to be worthless or uncollectible, have been charged off as bad debt on the retailer's books and records in accordance with generally accepted accounting principles, and have been claimed as a deduction pursuant to Section 166 of the Internal Revenue Code on the income tax return filed by the retailer. A retailer that has previously paid such a tax may, under rules and regulations adopted

---

[1]The Department cites *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶¶ 26-27, for the proposition that deference must be paid to decisions of the Tribunal. *Horsehead* was not a summary judgment case and, therefore, does not govern the standard of review in this appeal.

by the Department, take as a deduction the amount charged off by the retailer." 35 ILCS 120/6d(a) (West 2018).

¶ 20    The Department admitted at oral argument before this court that it takes no issue with Kishwaukee's recordkeeping or the veracity of its refund claims. Nevertheless, it argues that the language of section 6d(a) precludes cash basis taxpayers such as Kishwaukee from obtaining refunds. Section 166 of the Internal Revenue Code (26 U.S.C. § 166 (2018)) allows taxpayers to take a deduction for "[b]ad debts," *i.e.*, debts that are uncollectible. However, this does not apply to cash basis taxpayers such as Kishwaukee. Under the cash method of accounting, revenue is recorded when it is actually received and expenses are recorded when they are actually paid. Internal Revenue Serv., Publication 538, *Accounting Periods & Methods*, at 8-9 (rev. Jan. 2019), https://www.irs.gov/pub/irs-pdf/p538.pdf [https://perma.cc/ S687-5KTC]. By contrast, under the accrual method, revenue is recorded when the taxpayer has the legal right to receive it, and expenses are recorded when the taxpayer incurs the legal liability to pay them, even if no funds have yet been exchanged. *Id.* at 10-12. Because a cash basis taxpayer does not record revenue until it is received, it cannot claim a section 166 deduction for recorded revenue that later becomes uncollectible.

¶ 21    Kishwaukee contends that it is entitled to take a deduction under the second sentence of section 6d(a), arguing that it is "[a] retailer that has previously paid such a tax" and has "charged off" the uncollectible amounts in its internal books and records for financial accounting purposes. On its face, the second sentence of section 6d(a) of ROTA does not require a section 166 of the Internal Revenue Code deduction as a prerequisite for recovery. Moreover, section 6d as a whole does not mention cash basis taxpayers, much less purport to bar them from obtaining refunds.

¶ 22    Thus, the language of the statute is ambiguous as to its impact on cash basis taxpayers, and it is appropriate for us to consider the statute's legislative history as an interpretive aid. *Tri-State Coach Lines*, 315 Ill. App. 3d at 190. Representative DeLuca, a proponent of the bill, explained the bill's purpose as follows:

"Under current law, a retailer that administers its own credit to consumers is entitled to take a credit or tax deduction for the sales tax paid by the retailer when the consumer defaults on the payment for the merchandise. Senate Bill 507 will clarify existing law by allowing a retailer that offers a store credit card, also known as a private label credit card, to consumers that is administered by a third party to obtain a credit or refund for the sales tax paid to the state after the consumer defaults on the payment of the merchandise. Senate Bill 507 will clarify that the retailer must have already written off the underlying outstanding balance as bad debt on the retailer's federal tax return before applying to the Illinois Department of Revenue for the sales tax deduction." 99th Ill. Gen. Assem., House Proceedings, May 29, 2015, at 132-33 (statement of Representative DeLuca).

¶ 23    The following exchange then occurred between DeLuca and Representative Guzzardi:

"Guzzardi: *** [W]hat's the impetus behind this change? Why is that a better way than the way it's done now?

DeLuca: Because the retailer has paid the money to the state and it's actually not the state's money.

Guzzardi: How do you mean?

DeLuca: The sales tax portion.

Guzzardi: Mmm mmm. Explain.

DeLuca: Because they defaulted the.

Guzzardi: Sorry.

DeLuca: .the purchaser defaulted on the payment. Did not pay the bill.

Guzzardi: Right.

DeLuca: .for the purchase.

Guzzardi: Okay. So, the point of this is the purchaser didn't pay for the item.

DeLuca: That's correct.

Guzzardi: The store didn't get the value of the item and therefore, it shouldn't be passing along a percentage.

DeLuca: That's correct.

Guzzardi: .of that to the state in sales tax. Okay.

DeLuca: Yes." *Id.* at 134-35 (statements of Representatives DeLuca and Guzzardi).

¶ 24     This dialogue clarifies that the purpose behind section 6d of ROTA was to ensure that retailers could get refunds of ROT prepaid on defaulted goods because "the retailer has paid the money to the state and it's actually not the state's money." Notably, the purpose was not to prohibit cash basis taxpayers from obtaining such refunds. There was no discussion pertaining to cash basis taxpayers and no indication that the legislators considered the amendment's potential impact on small businesses that file their federal income tax returns on a cash basis. Moreover, the purpose behind enactment of section 6d applies equally to both cash and accrual basis taxpayers. Regardless of the accounting method a retailer uses, it remains true that "[t]he store didn't get the value of the item and therefore, it shouldn't be passing along a percentage *** of that to the state in sales tax."

¶ 25     In light of this clearly expressed legislative intent, we find that cash basis retailers, such as Kishwaukee, that prepay ROT on goods sold through installment contracts are entitled to "take as a deduction the amount charged off by the retailer" (35 ILCS 120/6d(a) (West 2018)) in the event of a buyer's default.

¶ 26     The Department argues that recovery under the second sentence of section 6d(a) is conditioned upon rules and regulations adopted by the Department. After the enactment of section 6d, the Department adopted a regulation stating that "[r]etailers or lenders that file federal returns on a cash basis and cannot claim a deduction pursuant to section 166 of the Internal Revenue Code are not eligible for the bad debt deduction." 86 Ill. Adm. Code § 130.1960(d)(5)(B) (2018).

¶ 27     A *reasonable* construction of an ambiguous statute by the agency charged with its administration and enforcement can create a presumption of correctness, if contemporaneous, consistent, long-continued, and accompanied by legislative acquiescence (*Citibank, N.A. v. Illinois Department of Revenue*, 2017 IL 121634, ¶ 39). However, the Department's regulation in this case is not reasonable. When Kishwaukee sells a car, it is required to pay ROT on the car's entire value up front. If the buyer defaults and Kishwaukee repossesses the car, it resells the car and *again* pays the full ROT up front. To deny Kishwaukee a refund under these circumstances would be to allow the State double recovery, which is both unreasonable and contrary to the express intent of the legislature in enacting section 6d. Additionally, as pointed

out at oral argument, an accrual basis retailer selling and then repossessing the exact same car would be entitled to a refund, despite there being no difference in the taxes the retailer originally remitted to the State. Thus, section 130.1960(d)(5)(b) of Title 86 of the Illinois Administrative Code is neither a reasonable nor a persuasive interpretation of section 6d of ROTA.

¶ 28                                               III. CONCLUSION

¶ 29        For the foregoing reasons, we find that Kishwaukee is entitled to a refund of $61,312.89 in paid ROT claimed in this case. We further enjoin the Department from denying Kishwaukee's subsequently filed and future refund claims on the grounds that Kishwaukee did not take a section 166 bad debt deduction on its federal income tax returns in connection with defaulted sales.

¶ 30        Reversed.