# Illinois Official Reports

## Appellate Court

---

### *Michael v. Pella Products, Inc.*, 2014 IL App (1st) 132695

---

| | |
|---|---|
| Appellate Court Caption | ROBERT MICHAEL, on Behalf of Himself and All Others Similarly Situated, Plaintiff-Appellant, v. PELLA PRODUCTS, INC., Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2695 |
| Filed | June 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant misclassified plaintiff as an independent contractor rather than as an employee of defendant for purposes of the Illinois Employee Classification Act, summary judgment was properly entered for defendant, since the administrative regulations promulgated by the Illinois Department of Labor pursuant to the Act provide that businesses formed as *bona fide* corporations are not subject to the Act, the record showed that plaintiff's residential contracting business provided window and door installation services pursuant to a contract with defendant, that business was incorporated with the Illinois Secretary of State under the laws of Illinois, and under those circumstances, plaintiff's business provided services to defendant as a *bona fide* corporation, not an "individual," and the Act did not apply. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-27672; the Hon. Mary Mikva, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Offices of Edward T. Joyce & Associates, PC (Edward T. Joyce and Arthur W. Aufman, of counsel), and William J. Harte, Ltd. (William J. Harte, of counsel), both of Chicago, and Block & Leviton LLP, of Boston, Massachusetts (Jeffrey C. Block and Erica G. Sorg, of counsel), for appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, PC, of Chicago (Michael H. Cramer, Michael D. Ray, and Daniel O. Canales, of counsel), for appellee.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion.

### OPINION

¶ 1    Plaintiff-Appellant Robert J. Michael, the owner of Robert J. Michael Homes, Inc. (RJM), brought an action against defendant Pella Products, Inc. under the Illinois Employee Classification Act (the Act) (820 ILCS 185/10 (West 2012)) alleging Pella misclassified him as an independent contractor instead of as an employee of Pella. Pella moved for summary judgment in the trial court on the ground that the Act's administrative regulations promulgated by the Illinois Department of Labor (the Department) (56 Ill. Adm. Code 240.110 (2008)) provide that incorporated businesses like RJM are excluded from the scope of the Act. The trial court granted summary judgment to Pella, finding that facts showed that Pella contracted with RJM, that RJM was a *bona fide* corporation under the regulations and, therefore, the Act did not apply. We agree and affirm.

¶ 2                                BACKGROUND

¶ 3    In 2007, Michael incorporated a residential contracting business with the Illinois Secretary of State, naming it "Robert J. Michael Homes, Inc." Michael owns 50% of RJM and is named its vice president; Michael's wife owns the other 50% and is named its president. RJM held a meeting of its board of directors, kept corporate board minutes, and filed articles of incorporation. RJM was initially capitalized in the amount of $1,000, paid by Michael, and issued 100 shares of stock. Since its incorporation, RJM has been in good standing with the State of Illinois.

¶ 4    Since 2007, RJM has filed corporate tax returns every year. Upon incorporation, RJM applied for and was issued an employer tax identification number. In 2009, RJM employed 14 people, including Michael. Michael, as co-owner of RJM, was responsible for the hiring of all of RJM's employees, tracking their hours of work, and setting their rates of pay. RJM's employees were paid directly by RJM out of its corporate bank account. RJM withheld federal

and state taxes from its employees' wages and issued W-2 tax forms for all of its employees. As an employee of RJM, Michael was also issued a W-2. In addition to earning wages from RJM as an employee, Michael also took a shareholder distribution from the corporation in 2009.

¶ 5     RJM also maintained general liability, worker's compensation, and unemployment insurance in its name. The record shows that several worker's compensation claims against RJM and unemployment insurance claims against RJM had been made by its employees.

¶ 6     Pella is in the business of selling and installing windows and doors. In 2008 RJM contracted with Pella to provide window and door installation services. RJM and Pella entered into a similar agreement in 2009. Both agreements were executed in RJM's name as the subcontractor.

¶ 7     As part of the agreements, Pella required RJM to provide sufficient labor to perform all the work required by Pella and in accordance with Pella specifications, standards, and expectations. Pella required RJM's employees to complete a Pella-sponsored training seminar and to perform all labor following Pella's installation protocols. Additionally, the agreements required RJM's employees to follow Pella safety protocol and clean up the jobsite pursuant to Pella specifications. For about 20% of the jobs, Pella's employees made quality control checks on RJM's work. RJM employees were required to wear Pella apparel and affix the Pella logo to any vehicles used by RJM employees. RJM provided tools and some framing materials for the jobs, while Pella provided the windows and other materials such as trim and caulk.

¶ 8     Pella customers contracted directly with Pella for installation services. After contracting with a customer, Pella scheduled installations and instructed RJM, via Michael, when and where to perform the installations. The customers paid Pella. Pella paid RJM directly based on the work performed. The funds were deposited into RJM's corporate account.

¶ 9     From September 2009 through December 2009, RJM simultaneously provided services for Pella and the Pleasant Dale park district. Pella and RJM ended their relationship in December 2009, and RJM has remained in business since.

¶ 10    In 2012, Michael filed a putative class action complaint alleging that Pella improperly classified him and others similarly situated as independent contractors instead of employees in violation of the Act. Pella moved for summary judgment on the basis that administrative regulations to the Act exclude *bona fide* corporations such as RJM from the purview of the Act. The trial court granted summary judgment in favor of Pella finding that Michael performed services for Pella through a "*bona fide* corporation" as defined in Title 56, section 240.100 of the Administrative Code (56 Ill. Adm. Code 240.100 (2008)), and not as an "individual" under the Act. Michael timely filed this appeal.

¶ 11                                ANALYSIS

¶ 12    Summary judgment is proper where "the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399 (2010) (citing 735 ILCS 5/2-1005(c) (West 2008)). If the undisputed facts fail to establish a necessary element of plaintiff's cause of action, summary judgment is appropriate. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). While a plaintiff need not prove its case at the

summary judgment stage, plaintiff must present enough evidence to create a genuine issue of fact. *Gyllin v. College Craft Enterprises, Ltd*., 260 Ill. App. 3d 707, 710 (1994). Our review of an order granting summary judgment is *de novo*. *Id*. at 711.

¶ 13    Michael urges this court to reverse the trial court's grant of summary judgment, claiming that despite the subcontracting agreement entered into between Pella and RJM, Michael, as an individual, can maintain an action for misclassification under the Act.

¶ 14    The Act establishes a rebuttable presumption that an "individual" performing services for a contractor is an employee of the contractor unless it is shown that: (1) the individual has been and will continue to be free from control or direction over the performance of the service for the contractor; (2) the service performed by the individual is outside the usual course of services performed by the contractor; and (3) the individual is engaged in an independently established trade, occupation, profession or business; or (4) the individual is deemed a legitimate sole proprietor or partnership. 820 ILCS 185/10 (West 2012). The Act was enacted by the General Assembly with the express purpose of addressing "the practice of misclassifying employees as independent contractors" in order to avoid payroll taxes, unemployment insurance contributions, worker's compensation premiums, and minimum wage and overtime payments in the construction industry. 820 ILCS 185/3 (West 2012).

¶ 15    The Act does not define "individual," but it does exempt independent contractors, sole proprietors, or partnerships that can satisfy specific statutory criteria showing that they effectively operate independently from the construction contractor. 820 ILCS 185/10(c) (West 2012); *Bartlow v. Costigan*, 2014 IL 115152, ¶ 21. Additionally, the Act vests in the Department the authority to adopt "reasonable rules to implement and administer this Act." 820 ILCS 185/65 (West 2012).

¶ 16    Empowered with this rulemaking authority, the Department's regulation instructs that an "individual performing services" does not include a "bona fide corporation." 56 Ill. Adm. Code 240.110 (2008). To determine whether a corporation is *bona fide* for purposes of the Act, the Department considers, among other factors, whether the corporation (1) is capitalized, (2) has issued corporate stock, (3) maintains a corporate bank account, (4) intermingles corporate and personal accounts or funds, (5) holds itself out as a corporation, (6) maintains corporate books and records, including corporate meeting minutes, and files corporate tax returns that are current and complete, and (7) has filed articles of incorporation and is in good standing, in the case of Illinois corporations, with the Illinois Secretary of State. *Id*.

¶ 17    On appeal, Michael does not dispute that RJM satisfies these factors and is therefore a "*bona fide* corporation" under the regulation. It is also undisputed that Michael is an employee of RJM. But Michael contends that he performed services for Pella in his individual capacity because Pella evaluated Michael's installation technique, Pella trained him on its installation protocols, Pella inspected Michael's work, Michael wore Pella branded apparel, and Pella designated the sites where Michael would perform installations. Essentially, Michael would have us look solely to the Act's elements to determine that he must be classified as an employee of Pella.

¶ 18    But before we can determine whether Michael was under the control and direction of Pella, or can meet other elements under the Act, we must conclude that the Act applies. Consequently, Michael must establish that he was an "individual" performing services for Pella.

¶ 19    Based on the evidence in the record, Michael cannot establish that he performed services as an individual and, therefore, the Act does not apply. The record shows that RJM, not Michael individually, rendered services to Pella through RJM's own employees.

¶ 20    The agreements to perform services for Pella were entered into with RJM as the "subcontractor." Michael signed the agreement, but only as "owner" of RJM. Under the agreement, RJM agreed to provide labor, skills, and tools necessary to perform all the work required for installations. RJM provided the labor by selecting from its own workforce employees for the installation projects on a given day. RJM supplied its employees with the tools necessary for each project. Pella paid RJM directly for the services provided by RJM's labor. Pella had no input as to the rate of pay for RJM's employees, and RJM hired, fired, and paid all of its employees. All wages earned by employees of RJM in connection with Pella jobs were paid out of RJM's corporate account. Although Pella scheduled the installation jobs per customer demand, RJM set the work schedules for its own employees.

¶ 21    During the time it performed services for Pella, RJM had 14 employees, including Michael himself. These employees were issued W-2 forms for amounts paid to them by RJM, from which RJM deducted federal and state taxes. RJM also maintained general liability, worker's compensation and unemployment insurance to protect itself and its employees during the duration of the relationship with Pella.

¶ 22    Here, it is clear that RJM, and not Michael as an individual, performed services for Pella under the subcontract agreement. The regulation promulgated by the Department explicitly dictates that a "*bona fide* corporation" is excluded from the purview of the Act. 56 Ill. Adm. Code 240.100 (2008). The Department is entitled to deference in interpreting the statute that it is charged to enforce (*Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 (2010)), and administrative regulations have the force and effect of law and are presumed valid (*People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008)). We may not invalidate an agency's regulation unless it is clearly arbitrary, unreasonable or capricious. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 288 Ill. App. 3d 701, 713 (1997).

¶ 23    Michael does not argue that the regulation is invalid or arbitrary and capricious. Michael also does not dispute that the Department's regulation provides that a "*bona fide* corporation" is excluded from the definition of an "individual" under the Act. Rather, Michael argues the trial court erred because it improperly applied the regulation to limit the right of Michael to assert an individual claim under the Act, contrary to the Act's intent and purpose.

¶ 24    The purpose of the Act is to curtail the misclassification of workers as independent contractors in the construction industry. To this end, the Act aims to prevent the competitive advantage wrongfully gained by businesses that misclassify employees as independent contractors, ensure that workers receive the benefits to which they are entitled, and ensure that contractors comply with tax and employment laws. See 820 ILCS 185/3 (West 2012); 56 Ill. Adm. Code 240.100 (2008).

¶ 25    The Act also recognizes that contractors may contract with legitimate independent contractors. See 820 ILCS 185/10(b)(4) (West 2012) (individual performing services is deemed an employee unless the individual is a legitimate sole proprietor or partnership). Thus, limiting the Act to individuals and excluding corporations or other legitimate independent contractors is consistent with the Act's purpose of curtailing misclassification of employees, while also permitting contracts with legitimate independent contractors.

¶ 26    Where, as here, a corporation like RJM properly classifies its own employees, complies with tax laws, pays its employees wages and provides them benefits, the concerns underlying the Act are not implicated. In this instance, the costs of doing business are factored into the contract price that the contractor pays to the "*bona fide* corporation" it contracts with. Pella, or any contractor, gains no unfair advantage by contracting with a "*bona fide* corporation" and, therefore, such contracts are consistent with the purpose of the legislation.

¶ 27    Michael claims that the Act and the regulation are silent on whether individuals working for "*bona fide* corporations" can assert claims under the Act. In other words, Michael asks us to determine whether individuals employed by a "*bona fide* corporation" have independent rights under the Act.

¶ 28    The answer is obvious. The individuals working for a "*bona fide* corporation" are already employees of that corporation. Those individuals employed by the corporation can seek wages and benefits, and assert any attendant claims as employees of that corporation. Michael, and others similarly situated, already receive wage and employment benefits from their employer and, therefore, cannot claim to be "misclassified" under the Act. Michael posits that this reading of the regulation achieves an absurd result because a corporation could simply classify its employees as independent contractors; in that case, Michael contends, those individuals would have a claim against a contractor like Pella under the Act. But Michael's logic is misguided. In Michael's hypothetical, the misclassification claim under the Act would lie against the employer, not the contractor. This is so because it is the employer who misclassified its own employees. In other words, had RJM misclassified him as an independent contractor, Michael would have a claim against RJM, not Pella. This interpretation of the Act and regulation is in accordance with the Act's stated purpose of curtailing misclassification of employees.

¶ 29    Michael also argues that contractors could skirt the Act by nominally entering into contracts with corporations and not directly with independent contractors. The possibility exists that a contractor could insist upon the creation of a corporate entity with which to contract in an attempt to avoid the Act's provisions. But then, of course, the corporation would not be "*bona fide*" and the effort to avoid the Act would fail. Moreover, these concerns are unfounded in the present case. There is no evidence that the agreement here was entered into nominally with a corporation and that Pella actually hired an individual. As discussed above, RJM provided the services and labor under the agreement. RJM was not created to avoid the Act, having been incorporated a year before it entered into an agreement with Pella. The decision to incorporate RJM was not influenced by Pella. RJM maintained itself as a separate entity, remained in good standing with the secretary of state, filed taxes and paid its employees, even after its relationship with Pella ended. RJM chose to hire, manage, and pay its own employees before Pella came into the picture.

¶ 30    Michael cites decisions from other jurisdictions in support of the contention that an individual can bring an action under the Act even if the contractor's formal contractual relationship is with an incorporated entity rather than the individual. See, *e.g.*, *Depianti v. Jan-Pro Franchising International, Inc.*, 990 N.E.2d 1054, 1067 (Mass. 2013) (requiring the existence of a contract between the putative employer and employee "would permit misclassification where a putative employer, otherwise liable under the statute, is insulated from such liability by virtue of an arrangement permitting it to distance itself from its employees"); *Anderson v. Homedeliveryamerica.com, Inc.*, No. 11-10313-Gao., 2013 WL

6860745, at *2 (D. Mass. Dec. 30, 2013) ("[A] principal objective of the law is to prevent potential employers, who would be otherwise subject to the wage statute [citation] from avoiding compliance by requiring the persons they contract with to do so under legal forms 'such as LLCs and S corporations.' [Citation.]"). Apart from the fact that these authorities are not binding on this court, their reasoning would not change the outcome here. Unlike their Illinois counterpart, none of the foreign laws involved in these cases include a provision comparable to the "*bona fide* corporation" regulation at issue here. Further, as we have noted, Pella played no role in Michael's decision to incorporate RJM and given that RJM is, in fact, a *bona fide* corporation, the concerns underlying the Act simply do not come into play.

¶ 31    The regulation at issue here excludes a "*bona fide* corporation" from the definition of "individuals performing services." It follows that when a "*bona fide* corporation," rather than an individual, performs services for a contractor, the Act does not apply. Under our view, the inquiry is whether a "*bona fide* corporation" performed services, and thus, the analysis focuses on what entity actually performed services for the contractors. Our findings do not rest solely on the agreement between Pella and RJM, but on who performed services. Because the uncontroverted facts show that RJM, and not Michael as an individual, performed services for Pella, Michael was not an "individual performing services" under the Act.

¶ 32    Given that the Act does not apply to Michael, we need not address the argument that there is a genuine issue of material fact as to whether Michael meets the elements of a legitimate sole proprietor or partnership performing services under section 10(c) of the Act.

¶ 33                                    CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court granting summary judgment in favor of Pella.

¶ 35    Affirmed.