FOURTH DIVISION
March 31, 2016

2016 IL App (1st) 141109

Nos. 14-1109 and 15-0816, Consolidated

| | | |
|---|---|---|
| SCOTT MITCHELL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 96 CR 6771-01 |
| | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Honorable |
| | ) | Matthew E. Coghlan, |
| Respondent-Appellee. | ) | Judge Presiding. |

| | | |
|---|---|---|
| DARRELL FAIR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 98 CR 25742 |
| | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Honorable |
| | ) | Maura Slattery-Boyle, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Under the Illinois Torture Inquiry and Relief Commission Act (Torture Act) (775 ILCS 40/1 *et seq*. (West 2012)), the Illinois legislature created the Illinois Torture Inquiry and Relief Commission (TIRC) "[t]o conduct inquiries into claims of torture with priority to be given to those cases in which the convicted person is currently incarcerated solely for the crime to which

he or she claims torture by Jon Burge or officers under his command, or both." 775 ILCS 40/35 (West 2012). The Torture Act defines a "claim of torture" as: "a claim on behalf of a living person convicted of a felony in Illinois asserting that he was tortured into confessing to the crime for which the person was convicted and the tortured confession was used to obtain the conviction and for which there is some credible evidence related to allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge." 775 ILCS 40/5(1) (West 2012).

¶ 2     Petitioners in this case allege they were tortured by individuals who previously served under the supervision of Jon Burge. Jon Burge was first suspended from the Chicago police department (CPD) in 1991 and was subsequently fired from the CPD in 1993. The acts of torture alleged in the cases now before us occurred after Jon Burge had been fired by the CPD. The TIRC found each of petitioners' claims had merit and referred the claims to the circuit court of Cook County, where each claim was assigned to a different judge. Soon thereafter, the State filed motions to dismiss in each case arguing that the TIRC did not have jurisdiction to review the claims filed by petitioners because those claims arose out of alleged torture committed after Jon Burge had been fired and was no longer employed by the CPD. The circuit court granted the motions to dismiss. For the reasons that follow, we reverse the judgments of the trial court and remand the cases for further proceedings.

¶ 3                                BACKGROUND

¶ 4     This consolidated appeal involves appeals from separate orders entered by the circuit court of Cook County dismissing petitioners Darrell Fair's and Scott Mitchell's claims of torture that were filed with the TIRC pursuant to the Torture Act. 775 ILCS 40/1 *et seq*. (West 2012).

¶ 5     In the first case, Fair, who was a student at Roosevelt University at the time of his arrest,

2

was convicted of first degree murder and sentenced to a 50-year penitentiary sentence following a 2003 jury trial for the murder of Chris Stubblefield. Fair's conviction and sentence were upheld on direct appeal, and the trial court's summary dismissal of Fair's postconviction petition was affirmed on appeal as well. Fair sought a writ of *habeas corpus* in federal court, which was denied by the United States District Court for the Northern District of Illinois. In his claim of torture, Fair alleged that after his arrest in 1998, he was taken into police custody and after 30 hours of interrogation and torture committed by detectives Przepiora, Porter and McDermott, he gave a confession to the State's Attorney. The record reflects that McDermott was a Chicago police officer who was supervised by Jon Burge for a number of years, and he testified in federal court against Jon Burge under a grant of immunity.

¶ 6     In the second case, Mitchell alleged police officers took him into custody for questioning to investigate his alleged involvement in a homicide committed during the course of an armed robbery. After 33 hours of interrogation and torture committed by Chicago police officers Joseph Danzi, Glen Turner and others who previously worked under the supervision of Jon Burge, he made a confession to the police officers. Mitchell was convicted of first degree murder and attempted first degree murder after he entered into a negotiated plea of guilty in exchange for consecutive sentences of 30 and 15 years imprisonment for the murder of Michael Mickey and wounding of Marvin Harris. Following the denial of Mitchell's motion to withdraw his guilty plea, this court reversed that ruling and remanded the matter for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). On remand, Mitchell withdrew his motion to withdraw his guilty plea. Mitchell later filed a postconviction petition that the trial court summarily dismissed, and that ruling was affirmed on appeal.

¶ 7     Separate from the ongoing proceedings in each of the cases, the TIRC had been

3

reviewing both cases with respect to petitioners' claims of torture. On May 20, 2013, the TIRC issued a "Case Disposition" pursuant to section 45 of the Torture Act (775 ILCS 40/45 (West 2012)), finding there was sufficient and credible evidence to warrant judicial review of Fair's claim of torture and directing the circuit court to consider Fair's claim of a forced confession while being held in police custody. The circuit court made a similar finding of merit in Mitchell's case on July 23, 2015 and, accordingly, directed the circuit court to consider Mitchell's claim of a forced confession while being held in police custody.

¶ 8    The chief judge of the circuit court of Cook County assigned petitioners' claims to two different circuit court judges. Shortly thereafter, the State filed motions to dismiss in both cases pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), asserting that petitioners' claims and the TIRC's "Case Dispositions" failed to state a valid cause of action under the Torture Act because neither case involved any allegations or evidence that Jon Burge or any officers under his command or supervision tortured petitioners. In both cases, the alleged torture occurred years after Jon Burge was first suspended from the CPD in 1991 and then fired in 1993.

¶ 9    Fair and Mitchell responded to the State's motions to dismiss by arguing that their cases fell within the scope of those claims that were reviewable under the Torture Act because the detectives who conducted their interrogations and engaged in torture had previously served under the command of Jon Burge. Petitioners also argued that the State's motions to dismiss were improper because the State failed to follow the governing administrative review procedures when challenging the TIRC's final findings and, in doing so, forfeited its right to challenge those findings.

¶ 10    With respect to Fair's case, the circuit court granted the motion to dismiss on December

23, 2013 after the judge made an oral finding that the Torture Act was not meant to apply to alleged torture by an officer many years after Jon Burge had been fired.

¶ 11    With respect to Mitchell's case, the circuit court granted the motion to dismiss on February 11, 2015.  In the court's written order, the court found that, under the plain language of the Torture Act, the TIRC exceeded its statutory authority by investigating and filing a "Case Disposition" with respect to Mitchell's claim when Jon Burge no longer worked for the CPD when Mitchell's allegations of torture had occurred.  Therefore, it found the TIRC's decision was void.

¶ 12    Fair was granted leave to file a late notice of appeal with respect to the circuit court's grant of the State's motion to dismiss, and Mitchell timely filed a notice of appeal with respect to the circuit court's grant of the State's motion to dismiss.   The cases were consolidated on appeal. For the reasons that follow, we reverse the circuit court's orders granting the State's motions to dismiss and remand each matter to the circuit court for further proceedings consistent with this opinion.

¶ 13                              ANALYSIS

¶ 14    In each case now before this court, petitioners seek reversal of the circuit court's grant of the State's motions to dismiss.  We review the circuit court's order granting a section 2-615 motion to dismiss *de novo*.  *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 54 (2011).

¶ 15    In this appeal, petitioners argue that the trial court lacked jurisdiction to enter orders granting the State's motions to dismiss because any challenge to the TIRC's findings needed to be filed within 35 days pursuant to the Administrative Review Law, and that never happened here. Petitioners also argue that the trial court erred when it dismissed their cases because their cases fell within the scope of those cases that could be reviewed by the TIRC pursuant to the clear and

5

unambiguous language of the Torture Act. Finally, petitioners argue that even if the language of the Torture Act is found to be ambiguous, evidence beyond the language of the Torture Act demonstrates that it intended to encompass cases like theirs where torture occurred at the hands of officers previously under Jon Burge's command as those that could be reviewed by the TIRC.

¶ 16    The State also argues that the language of the Torture Act is clear and unambiguous, but argues that the language provides that only those cases of torture that occurred at the hands of Jon Burge or officers under Jon Burge's command at the time the torture occurred can be reviewed by the TIRC. The State argues that this interpretation necessarily excludes any claims of torture occurring after Jon Burge was terminated, which would include petitioners' claims.

¶ 17                    Circuit Court's Jurisdiction

¶ 18    First we address petitioners' argument that the circuit court did not have jurisdiction to hear the State's motions to dismiss and enter orders granting the motions to dismiss. Petitioners argue that because no petition for administrative review was filed as provided for in the Torture Act, the court did not have jurisdiction to hear the motions to dismiss filed by the State. Section 55(a) of the Torture Act states: "Unless otherwise authorized by this Act, the decisions of the Commission are final and are subject to review as final decisions under the provisions of the Administrative Review Law, and shall only be overturned if the court finds that they are against the manifest weight of the evidence." 775 ILCS 40/55(a) (West 2012). "The Administrative Review Law provides that parties to a proceeding before an administrative review agency shall be barred from obtaining judicial review of an agency's administrative decision unless review is sought within the time and manner set forth in the statute." *Nudell v. Forest Preserve District of Cook County*, 207 Ill. 2d 409, 413-14 (2003); 735 ILCS 5/3-102 (West 2012) ("Unless review is sought of an administrative decision within the time and in the manner herein provided, the

6

parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision.").  "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***."  735 ILCS 5/3-103 (West 2012).  Petitioners argue that because the findings of the TIRC were never challenged within 35 days of issuing the TIRC's decision, which was mailed to the State's Attorney, after 35 days the circuit court no longer had jurisdiction to make rulings challenging the findings made by the TIRC or entertain the motions to dismiss filed by the State.  We disagree.

¶ 19     An administrative agency is different from a court because an agency only has the authorization given to it by the legislature through the statutes.  *Alvarado v. Industrial Comm'n,* 216 Ill. 2d 547, 553 (2005); *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989).  Consequently, to the extent an agency acts outside its statutory authority, it acts without jurisdiction.  *Business & Professional People for the Public Interest*, 136 Ill. 2d at 243.  A decision by an agency which lacks the statutory power to enter the decision is treated the same as a decision by an agency which lacks personal or subject matter jurisdiction—the decisions are void.  *Id*. at 243-44.  Because such actions are "void," they may be attacked at any time, in any court, either directly or collaterally.  *Id*.; *Genius v. County of Cook,* 2011 IL 110239, ¶ 25.  Accordingly, because the State's motions to dismiss argued that the TIRC acted outside of its inherent authority when it reviewed petitioners' claims, we find that the circuit court had jurisdiction to address those arguments.  See *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 21; see also *Newkirk v. Bigard,* 109 Ill. 2d 28, 36 (1985).

¶ 20                         Language of the Torture Act

7

¶ 21    Having found that the circuit court had jurisdiction to address the State's argument that the TIRC acted outside of its inherent power when it reviewed petitioners' claims, we must now determine whether the circuit court was correct in finding that the TIRC acted outside of those inherent powers when it reviewed petitioners' claims and subsequently found they had sufficient merit.  Of relevance to this appeal, the stated purpose of the Torture Act is "to investigate and determine factual claims of torture related to allegations of torture that shall require an individual to voluntarily waive rights and privileges as described in this Act."  775 ILCS 40/10 (West 2012).  The Torture Act defines "claims of torture" as:

> "a claim on behalf of a living person convicted of a felony in
> Illinois asserting that he was tortured into confessing to the crime
> for which the person was convicted and the tortured confession
> was used to obtain the conviction and for which there is some
> credible evidence related to allegations of torture committed by
> Commander Jon Burge or any officer under the supervision of Jon
> Burge."  775 ILCS 40/5 (West 2012).

The Torture Act further states that the TIRC shall have the following power and duty:  "To conduct inquiries into claims of torture with priority to be given to those cases in which the convicted person is currently incarcerated solely for the crime to which he or she claims torture by Jon Burge or officers under his command, or both."  775 ILCS 40/35 (West 2012).

¶ 22    Petitioners argue that the plain language of the Torture Act's definition of a "claim of torture" grants the TIRC with the power to review their cases, *i.e.*, claims of torture at the hands of officers formerly under Jon Burge's command, because the Torture Act provides for relief in any case where there is some evidence "related to" allegations of torture committed by Jon Burge

or any officer under the supervision of Jon Burge, and the Torture Act does not give a definition for "related to." Petitioners further argue that the State's assertion that the TIRC's jurisdiction does not extend to claims arising after Jon Burge was fired is without merit because there is no temporal limitation in the Torture Act's definition of "related to claims of torture" that would limit the TIRC's review to only those claims of torture that occurred while Jon Burge was still employed by the CPD. In the absence of any temporal limiting language, the State's interpretation of the Torture Act would necessarily involve adding the words "while under the supervision of Jon Burge" to the end of the definition of "claims of torture," which is something the court cannot do. *Poullette v. Silverstein,* 328 Ill. App. 3d 791, 794 (2002) ("The court must not construe a statute to add exceptions or limitations or change the law set forth in the statute so as to depart from the statute's plain meaning."). Petitioners argue that nowhere in the language of the Torture Act does it state that Jon Burge must "directly" be involved in the alleged torture, as suggested by the State; instead, petitioners note that the State's interpretation of the Torture Act would lead to absurd results because it would allow review of claims of torture at the hands of an officer under Jon Burge's command one day before Jon Burge was fired, but would not allow review of a claim of torture by the same officer who had been under the command of Jon Burge occurring one day after Jon Burge was fired. Last, Mitchell argues that the circuit court's construction of the Torture Act and the definition of "claims of torture" violate the rule of lenity.

¶ 23    The State argues that the plain language of the Torture Act's definition of "claims of torture" grants the TIRC with the power to review only "claims of torture" where the alleged torture was committed by Jon Burge or an officer under the command of Jon Burge at the time of the alleged torture. As such, the State argues that because the officers who allegedly tortured petitioners were not under the command of Jon Burge at the time of the alleged torture—the

9

alleged torture occurred several years after Jon Burge left the CPD—the TIRC did not have jurisdiction to review those claims.   The State argues that petitioners' interpretation of the Torture Act would impermissibly require rewriting the Torture Act's definition of "claims of torture" to state "allegations of torture committed by Commander Jon Burge or any officer *who was ever* under the supervision of Jon Burge[]," which the court cannot do.  *Poullette,* 328 Ill. App. 3d at 794 ("The court must not construe a statute to add exceptions or limitations or change the law set forth in the statute so as to depart from the statute's plain meaning.").   Last, the State argues that because there is a sunset provision in the Torture Act requiring all claims be brought before the TIRC no later than August 10, 2014 (775 ILCS 40/70 (West 2012)), this shows that the legislature could not have intended the Torture Act to encompass claims of torture by any officer who was ever supervised by Jon Burge even if the torture allegedly occurred many years after Jon Burge had left the CPD because it would render the sunset provision meaningless.

¶ 24     Based on identical language in the Torture Act, the State and petitioners argue two different interpretations of the definition of "claims of torture" in support of their arguments on appeal.   The construction of statutes presents a question of law which we review *de novo.  Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 35 (2009).   In construing a statute, " '[o]ur primary objective is to ascertain and give effect to legislative intent.' "  *Blum v. Koster,* 235 Ill. 2d 21, 29 (2009) (quoting *People v. Perry,* 224 Ill. 2d 312, 323 (2007)). " '[T]he surest and most reliable indicator of [legislative intent] is the statutory language itself, given its plain and ordinary meaning.' "  *Id*. (quoting *Perry,* 224 Ill. 2d at 323).  "In determining the plain meaning of statutory terms, we consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it."  *Id*.  "When the statutory language is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory

construction." *Id.* "We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Id.* A court should not construe a statute in a manner that would lead to consequences that are absurd, inconvenient, or unjust. *Paciga v. Property Tax Appeal Board*, 322 Ill. App. 3d 157, 161 (2001). Further, a court should avoid an interpretation of a statute that would render any portion of it meaningless or void. *Id.* However, when statutory language is ambiguous and susceptible to more than one interpretation, both of which are reasonable, it is appropriate to resort to other aids of construction to determine legislative intent. *People ex rel. Madigan v. Illinois Commerce Comm'n,* 2015 IL App (1st) 140275, ¶ 27; *Tri-State Coach Lines, Inc. v. Metropolitan Pier & Exposition Authority,* 315 Ill. App. 3d 179, 190 (2000) (a statute is ambiguous if it is capable of two reasonable and conflicting interpretations).

¶ 25   Here, we find the language of the Torture Act, specifically the definition of "claims of torture," is ambiguous because it is susceptible to two reasonable interpretations. On the one hand, we find that by using the words "related to" in the definition of "claims of torture" (see 775 ILCS 40/5 (West 2012) ("a claim *** for which there is some credible evidence *related to* allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge" (emphasis added))), it is reasonable to interpret that language as including those claims of torture committed by officers formerly under Jon Burge's command because such claims could conceivably be "related to"  "allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge."

¶ 26   On the other hand, however, without any temporal language indicating when the officer accused of torture had to be under Jon Burge's command—at the time of the torture or at any time—and given that the definition is written in the present tense, it is also reasonable to

interpret the statute's language as only encompassing "claims of torture" committed by Jon Burge or an officer presently under his command. Given that the State and petitioners offer two reasonable interpretations of the Torture Act, we find that the Torture Act's definition of "claims of torture" is ambiguous. See *Tri-State Coach Lines, Inc.,* 315 Ill. App. 3d at 190 (a statute is ambiguous if it is capable of two reasonable and conflicting interpretations).

¶ 27    Where a statute's language is ambiguous, we may look to other sources to ascertain the legislature's intent. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003). It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152-53 (1983); *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 656 (2005) ("[I]f the legislature has charged an agency with administering and enforcing a statute, we will give substantial weight and deference to the agency's resolution of any ambiguities in that statute—even if the ambiguity concerns the extent of the agency's jurisdiction under that statute." (Internal quotation marks omitted.)). A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise. *Illinois Consolidated Telephone Co*., 95 Ill. 2d at 153; *Adams v. Jewel Cos*., Inc., 63 Ill. 2d 336, 344-45 (1976) ("interpretations by administrative agencies express an informed source for ascertaining the legislative intent"). Therefore, while an agency's interpretation of a statute is not binding on this court (*Boylan v. Matejka*, 331 Ill. App. 3d 96, 98 (2002)), we "must give substantial weight and deference to statutory interpretations made by an administrative agency charged with administration of a particular statute." *Oregon Community Unit School District No. 220 v. Property Tax Appeal Board*, 285 Ill. App. 3d 170, 175 (1996).

12

¶ 28     Here, prior to this consolidated appeal, the TIRC was presented with the same question we are asked to decide today, and in an "Order Concerning its Jurisdiction" and in proposed regulations, the TIRC clearly expressed its opinion that "claims of torture" includes those like Fair's and Mitchell's claims, where the alleged torture occurred at the hands of officers previously under the supervision of Jon Burge and, therefore, such claims fell within the TIRC's jurisdiction and were reviewable by the TIRC.  In *In re Claim of Jaime Hand*, TIRC Claim No. 2011-025-H (June 18, 2014), the TIRC issued an "Order Concerning its Jurisdiction" that states:

> "the Commission believes that the plain language of the Act is not limited to claims of torture that were committed under the direct supervision of Jon Burge, but extends to claims that are 'related to allegations of torture committed by Commander Jon Burge or any other officer under the supervision of Jon Burge.'  The Commission believes that the use of the phrase 'related to' includes claims against officers formerly supervised by Burge who allegedly continued to commit the same types of acts, and that including those claims is consistent with the statutory purpose, the plain language, and the uncertainty in the legislature history."  *In re Claim of Jaime Hand*, TIRC Claim No. 2011-025-H (June 18, 2014).

Later, in an effort to adopt this interpretation, the TIRC engaged in formal notice-and-comment rulemaking proceedings and enacted regulations in the Administrative Code clarifying the extent of its jurisdiction when reviewing "claims of torture."  That regulation begins by restating the Torture Act's language that "claims of torture" is defined as "*a claim on behalf of a living person*

13

*convicted of a felony in Illinois asserting that the person was tortured into confessing to the crime for which the person was convicted, the tortured confession was used to obtain the conviction, and for which there is some credible evidence related to allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge"* (emphasis in original) (20 Ill. Adm. Code 2000.10 (2014)).  The rule goes on to explain that:

" 'Related to allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge' means that the claim or allegations involved are similar to allegations of torture discussed in:

the November 2, 1990 Office of Professional Standards report on allegations against Burge;

the July 19, 2006 Cook County Special Prosecutor's Report; and/or

testimony in the 2010 federal criminal trial of Jon Burge; and

that the allegations involve:

Commander Burge himself;

one or more officers who were, at the time of the interrogation (or other incident) in question, under the supervision of Burge; and/or

*one or more officers who had previously been under the supervision of Burge*."  (Emphasis added.)  *Id.*

14

Based on the above, we find it clear that the TIRC interprets the definition of "claims of torture" to include those claims of torture committed by officers previously under Jon Burge's command.

¶ 29    On appeal, the State does not argue that the TIRC's interpretation of the Torture Act was unreasonable—in fact, the State did not offer any arguments on appeal to address what its position would be in the event we found the language of the Torture Act ambiguous.  See *Michael v. Pella Products, Inc.*, 2014 IL App (1st) 132695, ¶ 22 (An agency's regulation is given the force and effect of law and presumed valid and may not be invalidated unless the regulation is clearly arbitrary, unreasonable or capricious.).  Given the TIRC's clear interpretation of the Torture Act, that "claims of torture" include those claims of torture committed by an officer "who had previously been under the supervision of Burge" (20 Ill. Adm. Code 2000.10 (2014)), and in light of the fact that we "must give substantial weight and deference to statutory interpretations made by an administrative agency charged with administration of a particular statute" (*Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 175), we defer to the TIRC's interpretation and reverse the circuit's finding that petitioners' claims fell outside of the TIRC's jurisdiction.  Accordingly, we reverse the trial court's rulings granting both motions to dismiss and remand for further proceedings in accordance with the provisions of the Torture Act.

¶ 30                              CONCLUSION

¶ 31    For the reasons above, the circuit court's orders granting the State's motions to dismiss are reversed.  The circuit court is directed to review petitioners' claims pursuant to the Torture Act and in accordance with this opinion.

¶ 32    Reversed and remanded with instructions.